**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CRAIG MOSKOWITZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST COUNTY BANK,<br><br>Defendant. | Civil Action No.<br><br><br>**CLASS ACTION PETITION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Craig Moskowitz ("Plaintiff"), on behalf of himself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding himself and on information and belief as to other allegations.

**INTRODUCTION**

1.      Plaintiff brings this action on behalf of himself and classes of all similarly situated consumers against Defendant First County Bank ("First County" or "Bank" or "Defendant") arising from the Bank's routine practice of (a) assessing more than one insufficient funds fee ("NSF Fee") on the same item and (b) charging *both* NSF Fees and overdraft fees ("OD Fees") on the same item.

2.      These practices breach contractual promises, violate the covenant of good faith and fair dealing, and/or result in the Bank being unjustly enriched.

1

3.      First County's customers have been injured by its improper practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with First County.

4.      On behalf of himself and the Classes (defined below), Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## PARTIES

5.      Plaintiff is a resident of Stamford, CT, and holds a First County checking account.

6.      Defendant is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes.  First County has its headquarters in Stamford, CT.  First County has $1.6 billion in assets and provides banking services to customers through bank branches in Connecticut.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed classes are comprised of at least 100 members; (2) proposed class members reside in at least eight states, meaning at least one member of the proposed classes resides outside of Connecticut; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because First County is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

I.   **FIRST COUNTY CHARGES MORE THAN ONE NSF FEE ON THE SAME ITEM AND CHARGES BOTH NSF FEES AND OD FEES ON THE SAME ITEM**

9.      As alleged more fully herein, First County's Account Documents allow it to charge a *single* NSF Fee or a *single* OD Fee when an item, including an electronic payment item, is returned for insufficient funds or paid into insufficient funds.

10.     First County breaches its contract when it charges more than one NSF Fee on the same item, since the contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

11.     The Bank similarly breaches its contract when it charges both a NSF Fee (or multiple NSF Fees) and an OD Fee on the same item since the contract explicitly states—and reasonable consumers understand—that the same item cannot incur both types of fees.

12.     This abusive practice is not universal in the financial services industry.  Indeed, major banks like JP Morgan Chase ("Chase")—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if an item is resubmitted for payment multiple times.[1]

13.     First County's Deposit Agreement (Exh. A hereto) never discloses this practice.  To the contrary, the Deposit Agreement indicates it will only charge a single NSF Fee or OD Fee on an item.

---

[1] As indicated by Chase's printed disclosures, an "item" maintains its integrity even if multiple processes are effected on it: "If we return the same item multiple times, we will only charge you one Returned Item Fee for that item within a 30-day period."

A.      **Plaintiff's Experience.**

14.     In support of his claims, Plaintiff offers an example of fees that should not have been assessed against his checking account. As alleged below, First County: (a) reprocessed two previously declined items; and (b) charged an additional fee upon reprocessing, for a total assessment of *$68 in fees on each item*.

15.     On August 27, 2019, Plaintiff attempted a payment to Capital One.

16.     First County rejected payment of this item due to insufficient funds in Plaintiff's account and charged him a $34 NSF Fee for doing so.  Plaintiff does not dispute the initial fees, as they are allowed by First County's Deposit Agreement.

17.     Unbeknownst to Plaintiff, and without his request to First County to reprocess the item, however, several days later, on September 4, 2019, First County processed the same item yet again, and this time it paid the items into insufficient funds and charged Plaintiff a $34 OD Fee each for doing so.

18.     *In sum, First County assessed Plaintiff $68 in fees in its effort to process one payment of $100.*

19.     Plaintiff understood the payment to be a single item as is laid out in First County's contract, capable at most of receiving a single NSF Fee (if First County returned them) or a single OD Fee (if First County paid them).

B.      **The Imposition of Multiple NSF Fees on a Single Transaction Violates First County's Express Promises and Representations.**

20.     First County's Account Documents repeatedly discuss OD and NSF Fees together as "Overdraft Fees" and repeatedly state that the Bank will assess a single Overdraft Fee and it will charge *$34 per item* that is returned due to insufficient funds:

> An insufficient balance in your account, which has not been covered by overdraft protection, is subject to *a* service fee charged against your account according to the

Bank's then current schedule of charges. Checks or other items drawn against insufficient funds in your account may also be subject to *the* service fee set forth in that schedule. The Bank may determine whether your account contains sufficient funds to pay a check or other item and only one determination of the account balance is required. If that determination reveals insufficient funds to pay the check or other item, the Bank will not be required to honor the check or other item and may return it. ***Alternatively***, the Bank may honor the check or other item and create an overdraft.

Deposit Agreement at 3.7 (emphasis added).

21.     The Deposit Agreement thus expressly states that First County may assess an insufficient fund fee or an overdraft fee, but not both.

22.     According to the Fee Schedule, at most, a *single* fee will be assessed when an "item" is returned or paid into overdraft:

| Fee Description | Fee Amount |
|---|---|
| Insufficient Funds Charge – Paid | $34.00 per item |
| Insufficient Funds Charge – Returned | $34.00 per item |

Fee Schedule (Exh. B hereto) (emphasis added).

23.     The same check, automatic bill payment or other electronic payment on an account cannot conceivably become a new item each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

24.     Even if First County reprocesses an instruction for payment, it is still the same item. The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

25.     As alleged herein, Plaintiff took only a single action to make a single payment; he may therefore be charged only a single fee.

26.     The disclosures described above never discuss a circumstance where First County may assess multiple NSF or OD Fees, or both an NSF Fee for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

5

27.     In sum, First County promises that one $34 NSF Fee or one $34 OD Fee will be assessed per item, and this must mean all iterations of the same instruction for payment.  As such, First County breached the contract when it charged more than one fee per item.

28.     Reasonable consumers understand any given authorization for payment to be one, singular item, as that term is used in First County's Deposit Agreement.

29.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Bank will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account.  Nowhere does First County disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do First County customers ever agree to such fees.

30.     Customers reasonably understand, based on the language of the Account Documents, that the Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF or OD Fees.  In other words, it is always the same item.

31.     Banks like First County that employ this abusive multiple fee practice know how to plainly and clearly disclose it.  Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant here never did.

32.     For example, First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A
> RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE**

**CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

33.     Klein Bank similarly states in its online banking agreement:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

34.     Central Pacific Bank, a leading bank in Hawaii, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection: "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

35.     BP Credit Union likewise states: "Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

36.     First County provides no such disclosure, and by failing to do so, deceives its accountholders.

**C.      The Imposition of Multiple NSF Fees or OD Fees on a Single Transaction Breaches First County's Duty of Good Faith and Fair Dealing.**

37.      Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party.  In such circumstances, the party with discretion is required to exercise that power and discretion in good faith.  This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers.  Indeed, the Bank has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties.  Here—in the adhesion agreements First County foisted on Plaintiff and its other customers—First County has provided itself numerous discretionary powers affecting customers' credit union accounts.  But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Bank abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

38.      First County exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines "item" in a way that directly leads to more NSF and OD Fees.  Further, First County abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Deposit Agreement.  This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

39.      First County also abuses discretion under the contract to engage in a reject-then-pay pattern of first rejecting—and charging an NSF fee on—an item and then, days later, paying that same item and charging an OD fee, despite the customer being in the same (insufficient funds) financial situation.

40.     By so acting to maximize fee assessments, First County fails to exercise its power fairly and in good faith.   Indeed, had First County paid the item into overdraft on the first processing attempt (as it, in fact, chose to do on the second processing attempt) it would have charged Plaintiff a single OD Fee.   Instead, First County first rejected the item so that it could charge an NSF Fee; then, only upon resubmission, it paid the same item and charged Plaintiff an OD Fee. The extra step served no purpose except to increase First County's fee revenue, and was an abuse of the discretionary powers it granted to itself under the contract.

41.     By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee or OD Fee on a single item, First County breaches the reasonable expectation of Plaintiff and other customers and, in doing so, violates the implied covenant to act in good faith.

42.     It was bad faith and totally outside Plaintiff's reasonable expectations for First County to use its discretion to assess two or three NSF Fees for a single attempted payment.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated pursuant to Federal Rule 23.  The Classes include:

All Connecticut citizens who, within the applicable statute of limitations period, were charged multiple NSF Fees for the same debit item in a First County checking account (the "Connecticut Multiple NSF Class").

All Connecticut citizens who, within the applicable statute of limitations period, were charged an NSF Fee and an OD Fee for the same item in a First County checking account (the "Connecticut NSF/OD Class").

44.     Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors, and the members of their immediate families, and any entity in which

Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

45.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add subclasses if necessary before this Court determines whether certification is appropriate.

46.    The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because First County has acted on grounds generally applicable to the Classes.  Such common legal or factual questions include, but are not limited to:

a)    Whether First County improperly charged NSF and OD Fees;

b)    Whether any of the conduct enumerated above violates the contract;

c)    Whether any of the conduct enumerated above violates the covenant of good faith and fair dealing;

d)    Whether any of the conduct enumerated above constitutes unjust enrichment;

e)    Whether any of the conduct enumerated above violates the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a ("CUTPA"); and

f)    The appropriate measure of damages.

47.    The parties are so numerous such that joinder is impracticable.  Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resorting to First County's records.  First County has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

48.     It is impracticable to bring members of the Classes' individual claims before the

Court. Class treatment permits a large number of similarly situated persons or entities to prosecute

their common claims in a single forum simultaneously, efficiently and without the unnecessary

duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory

judgments that numerous individual actions would engender.  The benefits of the class mechanism,

including providing injured persons or entities with a method for obtaining redress on claims that

might not be practicable to pursue individually, substantially outweigh any difficulties that may

arise in the management of this class action.

49.     Plaintiff's claims are typical of the claims of the other members of the Classes in

that they arise out of the same wrongful business practices by First County, as described herein.

50.     Plaintiff is more than an adequate representative of the Classes in that Plaintiff has

a First County checking account and has suffered damages as a result of First County's contract

violations, First County's violations of the covenant of good faith and fair dealing, and First

County's unjust enrichment.  In addition:

a)    Plaintiff is committed to the vigorous prosecution of this action on behalf of himself
      and all others similarly situated and has retained competent counsel experienced in
      the prosecution of class actions and, in particular, class actions on behalf of
      consumers against financial institutions;

b)    There is no conflict of interest between Plaintiff and the unnamed members of the
      Classes;

c)    Plaintiff anticipates no difficulty in the management of this litigation as a class
      action; and

d)    Plaintiff's legal counsel has the financial and legal resources to meet the substantial
      costs and legal issues associated with this type of litigation.

51.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action

that would preclude its maintenance as a class action.

52.     First County has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each of the Classes as a whole.

53.     All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Classes)

54.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

55.     Plaintiff and First County contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

56.     First County breached the terms of the contract.

57.     Plaintiff and members of the putative Classes have performed all of the obligations on them pursuant to the Account Agreements.

58.     Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches.

### COUNT II
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Classes)

59.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

60.     Plaintiff and First County contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

61.     Connecticut mandates that an implied covenant of good faith and fair dealing govern every contract. For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

62.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

63.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

64.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

65.     First County breached the covenant of good faith and fair dealing as explained herein.

66.     Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

67.     Plaintiff and members of the putative Classes have performed all of the obligations imposed on them pursuant to the Deposit Agreement.

68.     Plaintiff and members of the putative Classes have sustained monetary damages as

a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

## COUNT III
## UNJUST ENRICHMENT
### (In the Alternative to COUNT I and COUNT II)
### (On Behalf of Plaintiff and the Classes)

69.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing

paragraphs of this Petition as if fully set forth herein.

70.     This Count is brought solely in the alternative.  Plaintiff acknowledges that his

breach of contract claim cannot be tried along with unjust enrichment.

71.     To the detriment of Plaintiff and the Class, Defendant has been, and continues to

be, unjustly enriched as a result of its wrongful conduct alleged herein.

72.     Plaintiff and the Classes conferred a benefit on Defendant when they paid the Bank

the fees that were not disclosed or allowed for in the Deposit Agreement.

73.     Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits,

which under the circumstances, would be unjust to allow Defendant to retain.

74.     Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained

fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## COUNT IV
## CUTPA
### (On Behalf of Plaintiff and the Classes)

75.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing

paragraphs of this Complaint as if fully set forth herein.

76.     At all times relevant hereto, Plaintiff and members of the Classes were "persons"

within the meaning of CUTPA (C.G.S. § 42-110a, *et seq.*).

77.     First County's practice of charging NSF and OD Fess as described herein is an unfair and deceptive act and practice in violation of C.G.S. § 42-110b(a).

78.     As a result of First County's fraudulent and unfair business practices, Plaintiff and the Classes have suffered ascertainable losses within the meaning of C.G.S. § 42-110g(a) and have been damaged by First County's unlawful acts.

79.     First County's fraudulent and deceptive acts and practices present an ongoing threat and likelihood of deception to members of the public and constitute fraud upon the members of the public, as well as unfair, unlawful, and deceptive acts, in violation of CUTPA.

80.     First County engaged in unfair or deceptive acts or practices herein with the intent that others rely upon its concealment, suppression and/or omission of material facts, and acted intentionally, or at a minimum, with reckless disregard for Plaintiff's rights and the rights of the Classes.

81.     As a direct and proximate result of the foregoing acts and/or omissions of First County, Plaintiff and the Classes were damaged in an amount to be determined at trial, which Plaintiff and the Classes are entitled to recover, together with appropriate penalties, including punitive damages, attorneys' fees, and costs of suit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A.     Certifying the proposed Classes pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B.      Declaring that First County's policies and practices as described herein constitute a breach of contract, a breach of the covenant of good faith and fair dealing or unjust enrichment, and/or a violation of CUTPA;

C.      Enjoining First County from the wrongful conduct as described herein;

D.      Awarding restitution of all fees at issue paid to First County by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.      Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F.      Awarding actual and/or compensatory damages in an amount according to proof;

G.      Punitive and exemplary damages;

H.      Awarding pre-judgment interest at the maximum rate permitted by applicable law;

I.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

J.      Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  December 5, 2019.

Respectfully submitted,

BY:

/s/Laurie Rubinow
James E. Miller (ct21560)
Laurie Rubinow(ct27243)
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
65 Main Street
Chester, CT 06412
T:  860-526-1100
F:  866-300-7367
jmiller@sfmslaw.com
lrubinow@sfmslaw.com


Jeffrey Kaliel*
**KALIEL PLLC**
1875 Connecticut Avenue NW
10th Floor
Washington, DC 20009
(202) 350-4783
jkaliel@kalielpllc.com

Jeffrey M. Ostrow
Jonathan M. Streisfeld
Daniel E. Tropin
**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBER**T
1 West Las Olas Boulevard, Suite 500
Fort Lauderdale, FL  33301-1928
(954) 525-4100
(954) 525-4300 (FAX)
*ostrow@kolawyers.com*
*streisfeld@kolawyers.com*
*tropin@kolawyers.com*
(*Pro Hac Vice* Motions to be submitted)

*Attorneys for Plaintiff*

* *Pro hac vice* application to be promptly filed